(February 13, 1911.)

## 'A. S. WHITEWAY, Plaintiff, v. STATE, Defendant.

[113 Pac. 98.]

ROAD CONTRACT—CONSTRUCTION OF SPECIFICATIONS—CHANGE OF CONTRACT — ESTOPPEL — STATE WAGON ROAD COMMISSION — CLAIM AGAINST THE STATE.

(Syllabus by the reporter.)

1. Where it is apparent from the specifications of a contract for the construction of a road that the roadbed was intended to be a certain number of feet in width, but the contract is silent as to the amount of excavation necessary to be made or the amount of yardage that would have to be moved in order to comply with the terms of the contract with reference to the width of the road, the specifications must control, and should be construed with reference to the width of road required, and not the amount of yardage moved in order to meet such requirement.

2. In an action to recover compensation for extra work alleged to have been performed upon a road contract, which does not specify yardage of material moved as a basis of compensation, and where the evidence shows that neither party in making the contract considered yardage as the basis of compensation, the plaintiff cannot be heard to complain if in the building of the road the contractors moved a greater yardage than may have been indicated upon the stakes set to mark out the line of the road.

3. In a contract for the construction of a road upon a mileage basis, where at the request of the contractors a change is made in the

course of the road subsequent to entering into the contract, which change results in the expenditure of a larger sum of money than that originally estimated by the contractors, plaintiff is estopped from claiming payment for extra work performed by reason of such change.

4. A state wagon road commission is authorized to act only as a commission or through its authorized agent, and the unauthorized action of any individual member does not bind the state.

Original proceeding in this court for a recommendatory judgment. Action dismissed.

K. I. Perky and D. E. Brinck, for Plaintiff.

Where changes in construction or repairs are made necessary because of defects in the plans and specifications, the owner must pay for the extra work; whether the extra work consists in repairs necessitated through failure of the structure, or in addition to the work originally contemplated, is the same in principle. (30 Am. & Eng. Ency. of Law, 2d ed., 1283; *Bentley v. State,* 73 Wis. 416, 41 N. W. 338; *McConnell v. Corona City Water Co.,* 149 Cal. 60, 85 Pac. 929, 8 L. R. A., N. S., 1171; *Dwyer v. New York,* 77 App. Div. 224, 79 N. Y. Supp. 17; *Wood v. Malone,* 131 Pa. 554, 18 Atl. 984; *Erskine v. Johnson,* 23 Neb. 261, 36 N. W. 510; *Wyandotte & D. R. Co. v. King Bridge Co.,* 100 Fed. 197, 40 C. C. A. 325; *Langley v. Rouss,* 85 App. Div. 27, 82 N. Y. Supp. 1082; *Becker v. New York,* 77 App. Div. 635, 78 N. Y. Supp. 1064; *Burke v. Dunbar,* 128 Mass. 499; *Daegling v. Gilmore,* 49 Ill. 248; *Seymour v. Long Dock Co.,* 20 N. J. Eq. 396; *Byron v. Mayor,* 54 N. Y. Super. Ct. 411.)

The stakes did not indicate the actual cut or fill, but a great deal more excavation and overhaul was required at the respective stations than the stakes showed to be necessary. The plaintiff was entitled to rely and did rely, upon the work of the engineer representing the commission; to do otherwise would have required him and each of the other bidders to make a survey on his own account at great expense, which in such cases is certainly not expected of the contractor. As is well known, work of this kind is usually based on yardage. That the stakes were originally set for the purpose of construct-

ing a private road is not material, so long as they were the stakes which were used and were intended to be used in computation of the work in hand.

D. C. McDougall, Attorney General, and J. H. Peterson, Assistant, for the State, cite no authorities.

BUDGE, District Judge.—This is an original action brought by the plaintiff, A. S. Whiteway, against the defendant, the state of Idaho, for the purpose of procuring a recommendatory judgment in favor of the plaintiff for report to the legislature of the state of Idaho, as provided in section 10 of article 5 of the constitution.

Section 10 of article 5 of the constitution provides:

"The supreme court shall have original jurisdiction to hear claims against the state, but its decisions shall be merely recommendatory; no process in the nature of execution shall issue thereon. They shall be reported to the next session of the legislature for its action."

The legislature of this state, by an act approved March 8, 1905 (Sess. Laws 1905, p. 206), entitled, "An act to provide for the construction of a system of wagon roads and trails in the intermountain region of Idaho; creating 'The Idaho Intermountain Wagon Road Commission,' providing for its appointment, prescribing its duties, and fixing its compensation; providing for the issue and sale of state bonds for defraying the costs of said system of roads and trails, and authorizing the levy of a tax to pay the principal and interest of said bonds," established a commission known as "The Idaho Intermountain Wagon Road Commission." The plaintiff, A. S. Whiteway, and one W. A. Hicks, a copartnership doing a general construction business under the firm name of Whiteway & Hicks (which said copartnership was subsequently dissolved, the said A. S. Whiteway succeeding to all of the property, credits, accounts, rights and liabilities of the said firm, and particularly to all of the rights and liabilities arising out of the contract and transaction hereinafter mentioned), on or about the 29th day of June, 1905, entered into a contract with

the said commission for the construction of what is known as the "Warren wagon road," and this action is brought by the plaintiff, A. S. Whiteway, as the successor of said copartnership.

Notice was duly published, asking for sealed bids for the construction of said road, and on the 27th day of June, 1905, the plaintiff submitted a bid in writing to the chairman of said commission, in words and figures as follows, to wit: "We will complete the Warren and Big Creek wagon road, in accordance with the plans and specifications, for the sum of $660 per mile."

The plans and specifications referred to in the bid of the contractors were duly signed by the president and secretary of said commission and said contractors on the 29th of June, 1905. The contract entered into between the said commission and said contractors described the wagon road to be constructed as being "A wagon road beginning at the Mayflower quartz-mill, about two miles east of Warren, and extending across the South fork of the Salmon river and Elk creek summit, to the lower Werdenhoff cabin on Smith creek, a distance of about thirty-two miles." The contract provided for the payment by the defendant to the contractors of the sum of $25,000 for the construction of the said wagon road (together with a bridge which is not in controversy in this action) according to the plans and specifications that were then on file in the office of the said commission and also on file at the office of the engineer who was to take charge of said work, Charles W. Luck of Weiser, Idaho. The said plans and specifications, after stating the amount that was to be paid, and the manner in which the said payments were to be made, together with the dates of the payments, and the amount to be retained after the work was fully completed, until the commission was fully satisfied that all debts, liens or rights of action growing out of the construction of said road had been fully settled, provided, further, that the contractors were to construct the aforesaid wagon road in a thorough and workmanlike manner, furnish all necessary labor and material for the.completion of said road, supply such tools and appliances as were

necessary for the proper. performance of the work incident to the construction of said road, the work to begin within a specified time and to be completed within the time specified in the contract, which time was later extended, by agreement of the commission and the contractors, but by reason of which extension the merits of this case are in no wise affected. The contract provided that the contractors were to do the work and supply the material according to the plans and specifications on file in the office of Charles W. Luck, the engineer in charge of said work, and in all respects according to his directions. There are other provisions in the contract, which provide for the payment of material and labor and for the protection of the state against liens, and for the acceptance, as final, of the decision of the engineer in charge touching any point of the plans and specifications not otherwise made clear.

The specifications attached to and made a part of the contract for the construction of the wagon road in question, provided, first, "that the road should be graded and constructed as located on the ground, or hereafter to be located by the engineer"; and, second, "that the roadbed should be at least six feet wide on solid ground. The excavated material is to be so placed as to increase the width of the finished roadbed to eight feet. Wherever the natural slope is so steep that the excavated material will not remain in place and increase the width to eight feet, the cut is to be made enough wider to make the full width of eight feet. On curves of a radius of 75 to 100 feet the solid bed shall be at least eight feet and the finished roadbed at least ten feet wide. On curves of less than 75 feet radius, the solid bed shall be at least ten feet, and the finished roadbed at least twelve feet wide. In all places the road shall be wide enough to carry with safety a six-horse team and trail wagon. On cross-sections, the road shall be horizontal."

The contract provided that numerous other things should be done, such as building culverts and corduroying places that were miry and boggy and providing for suitable drainage, removing of stumps and rocks from the roadbed, and the building of turnouts certain distances apart.

The plaintiff alleges that in the construction of said road the contractors performed extra labor in the removing of 6725.4 cubic yards of earth and rock over and above that indicated by the engineers' stakes, in excess of his estimate upon which he based his bid for the construction of said wagon road, and entered into the contract for the construction of the same at the price stated in his bid; and he alleges that by reason of the additional excavations of earth and rock he is entitled to a judgment in the sum of $7,387.75. The plaintiff alleges in his complaint, among other things, that certain engineer's stakes along the route of said road, placed there on behalf of the said commission, indicated the cuts and fills that were necessary to be made in order to comply with the contract heretofore referred to, and that said grade stakes were set by or under the direction of the said commission prior to the filing of the bid of the plaintiff, and prior to the execution of the contract heretofore referred to; but that in the prosecution of said work it required, as above stated, the removal of additional rock and earth in excess of that indicated by the grade stakes, in order to complete the road according to the plans and specifications, and that he was misled in his estimate by reason of the existence of the engineer's stakes, to his damage in the amount prayed for in his complaint.

The plaintiff further alleges in his complaint that when the road in question had been partly constructed, the commission in charge of the work refused to accept the same, and required the contractors to make the additional excavations, which were in addition to that indicated by the grade stakes, and to make other additional excavations at other places along the road, to place the bed of the road at all points on solid ground; and he alleges that the contractors were instructed by the engineer in charge, and by members of the commission, to perform extra work along said road, in addition to that indicated by the stakes or provided for in the contract, and that the said members of the commission agreed to pay him a reasonable sum for extra excavations so done by him and deemed by them necessary in order to make the road in all respects suitable for public travel.

The plaintiff alleges the presentation of his claim for the extra work done and for the value of the same, and its disallowance by the commission; and also alleges the filing of his claim with the state auditor, for presentation to the state board of examiners, and its disallowance by that board.

The state, in answer to the allegations of the plaintiff's complaint, admits the contract as entered into, and that the plans and specifications were a part of said contract; admits that the plaintiff entered upon the performance of the work, and the completion of the work and acceptance of the road. The state admits that the contract and specifications provided that the said road should be graded and constructed "as located on the ground, or hereafter to be located by the engineer," but denies that pursuant to said or any specifications the engineer in charge of said work on behalf of the commission or its authorized agent, caused to be set grade stakes marking the depth of the excavations necessary to be made at the various places along the proposed road; denies that the grade stakes were set prior to the bid made by the contractors for the work, or prior to the execution of the contract; denies that the bid made by the contractors was based on the line of road or the amount of excavation indicated by the said or any grade stakes; denies that the engineer in charge for the Idaho Intermountain Wagon Road Commission, or any authorized agent of said commission, or the commission itself, refused to accept the road so constructed, as alleged by the plaintiff, or required the contractors to make further excavations in addition to that indicated by the grade stakes, or to make such or any additional excavations at other places along the road, or to place the roadbed at all points on solid ground; denies that the contractors were instructed or directed by the engineer in charge, or by said commission, or by any authorized agent of said commission, to excavate at all places or at any place to such a depth that it would be necessary to construct fills at low places, as alleged by plaintiff, or at any points along the proposed road; denies that in consideration of the contractors doing such extra work, or any extra work, two or any number of the members of said commission, or its

authorized agent, agreed that the contractors should be paid a reasonable or any sum for the extra excavation so done by them; denies that the contractors made any additional excavation of rock and earth; and denies that the said extra work was executed or done by the contractors, or anyone in their behalf, or that it was worth the amount alleged by the plaintiff, or any amount whatever. The defendant also denies that the plaintiff, on or about the 1st day of January, 1907, as alleged in plaintiff's complaint, presented his claim for the value of said or any extra work, to the said commission, or that the same was disallowed by the commission; and the defendant denies that said claim was presented to the state board of examiners for allowance on the date alleged in plaintiff's complaint, or at all, or that the same was disallowed by the said state board of examiners.

It appears from the testimony in this case that the stakes testified to by the witnesses were placed along the road in question by Mr. Luck while in the employ of several mining companies, in the spring of 1904, and prior to the filing of the bid by the contractor, or the letting of the contract by said commission to the contractors, and that they were there at the time the contract in question was entered into, but that they were not placed there at the instance of the commission, and it appears that the existence of the stakes in question was not known to the commission at the time the contract was entered into.

The bid of the contractors in no way refers to the question of yardage, and its fair interpretation indicates that the bidder intended to construct the road in question at so much per mile, according to the plans and specifications, and not at so much per yard. From the plans and specifications it is clearly evident that the bid was offered and accepted upon a mileage basis. There is nothing in the bid or specifications that would indicate that the contract was to be based upon a yardage basis, and from the contract it appears that the reference therein made "that the road is to be graded and constructed as located on the ground, or hereafter to be located by the engineer," clearly indicates that the stakes were intended only

to indicate the line or course of the road to be constructed, and had no reference to the yardage to be moved. The latter clause, ''or hereafter to be located by the engineer,'' could convey no other meaning than that any portion of the line or course of the road not indicated by the stakes should be subsequently located by the engineer in charge. Subd. 2 of the contract in question specifically states that the roadbed is to be at least six feet wide, on solid ground, and that the excavated material is to be so placed as to increase the width of the finished roadbed to eight feet. There is no provision in the contract that the earth to be moved should be computed upon a yardage basis, or that the contractors should be paid upon a yardage basis, but, on the contrary, it is provided that they should build the road on solid ground the width fixed in the contract, namely, six feet, and by reason of the removal of the earth in the building of the road for the required six feet, that the roadbed as finished should be eight feet. It is further provided in the contract that the road on certain curves should be ten feet, and on others that it should be a finished roadbed of at least twelve feet in width.

Where it is apparent from the specifications that the roadbed should be a certain number of feet in width, and the contract is silent as to the amount of excavation necessary to be made, or the amount of yardage that would necessarily be moved in order to comply with the term of the contract with reference to the width of the road, we are of the opinion that the specifications should control, and should be construed with reference to the width of road required, and not the amount of yardage that would be necessary to be moved.

It appears from the testimony in this case that when the contractors filed their bid, and prior thereto, the specifications were fully and carefully explained to their representative by the engineer in charge of the work; that he was informed of the existence of the stakes, and the purposes for which they were placed upon the route, and at whose instance, and the provisions in the contract heretofore referred to were fully and carefully elucidated to and understood by him; and that nothing was said by the representative of the contractors with

reference to the subject of yardage. We are of the opinion that where this is established by the evidence and where this knowledge is brought home to the contractors, the plaintiff cannot be heard to complain if in the building of the road in question the contractors moved a greater yardage than may have been indicated upon the stakes.

The testimony in this case offered on behalf of the plaintiff fails to establish the amount of extra work done by the contractors, if any, or the yardage moved in excess of the amount indicated upon the stakes, even if the figures on the stakes indicated the yardage to be moved. The method of measurement adopted by the plaintiff's witnesses was such that the yardage could not be even approximately ascertained. Even if the contention of the plaintiff could be maintained, the amount that the state would be indebted to him upon a yardage basis could not be ascertained from the measurements testified to by the witnesses for the plaintiff.

It appears from the evidence that there was a change made in the course of the road, subsequent to the making of the contract, but that such change was made at the request of the contractors, and we are of the opinion that where a change is made under such circumstances, even though it may involve a larger expenditure of money than that originally estimated by the contractors, the plaintiff would be estopped from claiming payment for extra work performed by reason of such change, unless it was specifically provided in a subsequent contract that the contractors should be compensated therefor, and that is especially true where the contract is for so much per mile and not for so much per yard. The contract expressly provides that the contractors are to be paid upon a mileage basis.

The testimony establishes the fact that the commission, as such, neither acted nor refused to act upon the claim filed by the plaintiff for the alleged extra work. The action of any individual member of the commission would not bind the state. The commission would be authorized to act only as a commission, or through its authorized agent.

The judgment of the court is that the plaintiff cannot recover, and is therefore not entitled to a recommendatory judgment, and that his cause of action should be, and the same hereby is, dismissed, costs to be taxed in favor of the state.

Stewart, C. J., and Ailshie, J., concur.